## PATTERSON v. ROXANA PETROLEUM CO.

No. 10837—Opinion Filed March 17, 1925.

1. **Appeal and Error—Questions of Fact—Conclusiveness of Verdict.**

The jurors are the triers of the facts and the sole and exclusive judges of the evidence and the credibility of the witnesses, and where there is evidence reasonably supporting the verdict of the jury, such verdict will not be disturbed on appeal.

2. **Same.**

Where the verdict is based upon conflicting evidence, it will not be disturbed on appeal, a conflict of the evidence being such a conflict that reasonable minds might reach different conclusions.

3. **Nuisance — Determination — Nuisance Per Se.**

An instrumentality that is at all times and under all circumstances, irrespective of its location and environment, a nuisance, is said to be a nuisance per se. There are instrumentalities, however, which in their nature are not nuisances, and whether a particular instrumentality constitutes a nuisance depends upon its surroundings, the manner in which it is conducted or managed, or other circumstances.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Payne County; Arthur R. Swank, Judge.

Action by Z. G. Patterson against the Roxana Petroleum Company of Oklahoma, for damages. Judgment for defendant. Plaintiff appeals. Affirmed.

Walter Mathews, for plaintiff in error.

Koerner, Fahey & Young, for defendant in error.

Opinion by THOMPSON, C. This action was commenced in the district court of Payne county by Z. G. Patterson, plaintiff in error, plaintiff below, against the Roxana Petroleum Company of Oklahoma, a corporation, defendant in error, defendant below, for damages to the private property of plaintiff in error, caused by the erection and operation of a refinery near the property of plaintiff in error.

The parties will be referred to as plaintiff and defendant as they appeared in the lower court.

The petition, in substance, alleges that the plaintiff was the owner of a tract of land known as the Crystal Springs addition to the town of Cushing, Okla., upon which he had made lasting and valuable improvements, consisting of a dwelling house, outbuildings, cellar, planted shade trees, and otherwise beautified said premises; that while he was occupying and enjoying the same with his family the defendant, in the year 1917, constructed a refinery and has since operated the same for the purpose of refining crude petroleum into by-products; that said refinery was within 150 yards of his residence and that the operation of said refinery was and always will be a permanent and lasting annoyance, injury, and danger to the comfort, repose, health, safety, and security of the plaintiff and his family in the use and enjoyment of their said home and premises; that, in the operation of said refinery, there is emitted therefrom noxious and poisonous odors, fumes, and gases, and also noises from the operation of the machinery, which so affects the health, comfort, and repose of the plaintiff and his family as to render such residence almost uninhabitable; that the defendant has permitted oil and acids and other refuse from said refinery to drain into a water well, wholly destroying the water in said well for stock, domestic, and other purposes, and rendered a portion of the soil of his premises wholly unproductive; that the defendant had kept stored in quantities of more than 100 pounds and manufactured within ten rods of his dwelling house on his premises gasoline and other explosive by-products of crude petroleum, which rendered his residence an extremely hazardous and unsafe place to live; that there was not then, nor has there ever been, another oil refinery or other industry within the vicinity of said residence, and prayed judgment for the sum of $7,500 for the usable value of the premises and for a like sum for a decrease in the market value of the same.

The defendant answered by way of general denial and for further answer alleged that it had been the owner of the premises upon which the refinery is situated since the 8th day of July, 1916; that it had con-

structed and was operating its refinery on its said lands for the purpose of developing the natural resources of the near by and adjacent lands; that it had operated the same in a lawful way in full compliance with the laws of the state of Oklahoma; that it denied specifically that the operations of its refinery were in any way detrimental to the peace, comfort, health, repose and security of the plaintiff; that it had operated the same for the purpose of reasonably carrying on its said business. and that said business had been done and carried on without damage to the said plaintiff in any manner whatsoever.

Upon these issues the cause was tried to the court and jury and at the close of all the evidence in the case the jury returned its verdict in favor of the defendant and against the plaintiff.

Motion for new trial was filed, heard, and overruled and exception reserved by the plaintiff. The court rendered its judgment upon the verdict of the jury that the plaintiff take nothing by his action and that the defendant have judgment for its cost, from which judgment the plaintiff appeals to this court for reversal of the same and assigns as error the overruling of the motion for new trial.

In the brief of attorney for plaintiff it is argued that the verdict of the jury is in contravention of the uncontroverted evidence in the cause and that the court erred in both refusing to give and in giving certain instructions to the jury.

Upon the first proposition all disputed questions of fact, all contradictions in the testimony, are concluded by the verdict of the jury if there is any evidence reasonably tending to support said verdict.

The evidence of the plaintiff, himself, was to the effect that the defendant's refinery was about 300 yards from his property; that the gases, fumes, and odors from the refinery were disagreeable, but more noticeable to him than it was to his family, and that at one time the smoke from a fire at the refinery caused. his eyes to smart and burn and made him dizzy once for a while; that it had been two or three months since he had last smelled any odor; that he had one large spring, which was not, in any way, affected by the refinery; that he had a small well, or spring, alongside of a natural drainage course that was so affected that it made the water unfit for the use of stock and domestic purposes. At one place he testified that the depreciation in the value of his property commenced at the time it was

learned that the defendant was to build its refinery on lands adjacent to his property, and again he testified that it did not depreciate any before the refinery began to operate, and again that it depreciated when he lost his small well, or spring; that it was the water from the spring and well that made his property valuable and that he was selling water until the well was condemned by the chemist for the State Health Department. Again, he testified that he had cut out the use of the small well, or spring, before the suit was brought in July. The chemist for the State Health Department made his analysis and reported the same to the Santa Fe Railroad Company and plaintiff on September 3rd after the action was filed on July 5, 1918. At another time he testified he quit using the water from this well, or spring, in June. 1918; that he was selling the Santa Fe water at the rate of $31.10 per month and to another party to the amount of $18 per month, which accounts he lost because of the destruction of the small well, or spring, as. the big spring did not furnish sufficient water to supply the demands of his customers, but the evidence showed that he continued to sell water to the Santa Fe after the action was filed until September: that he was running a bottling plant in connection with the spring and the small well. or spring; that his property was surrounded by the switching tracks of the M., K. & T. Railroad, a tank farm, and the defendant's refining plant; that the town of Cushing is an oil town with something like 20 refineries in and near said town; that there were two other refineries within a mile of his property. The other testimony in the case is that the air in and around the town of Cushing is more or less impregnated with oil and gas fumes and the odor from an acid plant; that the switches of the railroad carried switch engines, tank cars, and other cars that were shifted back and forth near plaintiff's property continuously with the noises necessarily attendant under such circumstances; that the odors in, around, and about plaintiff's premises came from every direction; that the Indian Chief and the Consumers Refineries are also located in that vicinity and were built before plaintiff improved his property; that other refineries were in this section and residences occupied by people, who live as near, or nearer to said refineries than the plaintiff lives to defendant's refineries, without any injury to their health or well being. The county assessor testified that he had made no reduction in the assessment of plaintiff's property for taxation since the erection of the refinery; that defendant's refinery was built in

the most approved manner with all the modern equipment and was operated with due care and skill; that all refuse was collected in a box and pumped off by a steam pump, the noise of which is complained of by plaintiff in this case, and that no oil or refuse was allowed to run down the natural watercourse on plaintiff's property, except one time in an excessive flood that overflowed the box when the pump was not able to carry it. The evidence showed that the finished gasoline product was not stored near plaintiff's property.

The testimony of the chemist of the State Health Department is that he made an analysis of the water taken from the tanks of the plaintiff, which were filled from the springs of plaintiff, and that it contained bacteria from animal and vegetable matter and did not contain any poisonous substances from oil and gas or refuse from the refinery and his report and analysis were introduced in evidence in this case. There was no evidence that any damage to the health of the plaintiff and his family had occurred from the building and operation of the refinery. There was no permanent damage proven to the land, itself, or to the use or the rental value thereof, but, on the contrary, there is evidence that the land was enhanced in value on account of the building of the defendant's refinery. The theory of the plaintiff, throughout his whole testimony, was to the effect that his property was damaged on account of the loss of his small well, or spring. The testimony of one of the plaintiff's own witnesses is to the effect that he had abandoned the small well, or spring, and had pulled the pump out of it long prior to the time he claimed it was condemned by the Health Department and one of his employes testified that he began working in May and quit in January, and during that whole time he never saw nor heard tell of the little well, or spring. The testimony further showed that the little well, or spring, was only a few feet deep and that it only cost a dollar or a dollar and a half per foot to dig it; that the springs of the plaintiff were in a small draw, which was a natural watercourse, and that there were tin cans, broken glass, rubbish, and filth and other refuse in and around said spring, and that impurities were being washed into said springs from the drainage coming off the watershed where stock had been running. The only evidence of noise was from the operation of a small pump used by the defendant in preventing the waste and refuse from the refinery from running on the plaintiff's property.

On account of the unreliable, unsatisfac-

tory, and contradictory testimony of the plaintiff, himself, and on account of his failure to prove any actual damage to his health, or that of his family, or any real objectionable noises or odors, which would affect the sensibilities of an ordinary person in this oil town, surrounded by all these oil refineries and tank farms, and his failure to prove his water supply was contaminated by said refinery, but, on the contrary, it having been shown that it contained bacteria from animal or vegetable matter for which it was condemned, and on account of the railroad yard and its attendant noises adjacent to his property, we are of the opinion that the verdict of the jury is fully sustained by the evidence, and if the case was submitted to the jury under proper instructions, we are convinced that the jury was fully justified in returning the verdict in this case.

In passing upon the instructions, complained of, it will be necessary to analyze briefly the issues raised by the pleadings. There is no complaint in the petition, nor is there any proof in the record, that the refinery of defendant was not properly constructed, but there is proof that it was modern in every respect and operated and managed in the most approved manner. The only allegations upon which the damage was based, appearing in plaintiff's petition, are that, on account of its operation, there were disagreeable odors and noises, and that the oil, gas, and other refuse from the operation of the plant contaminated a small well, or spring, and rendered a fractional part of an acre of plaintiff's land unproductive. The very instruction, asked for by the plaintiff and given by the court, applies to the operation of the plant, and while the instruction asked for and refused by the court and complained of by plaintiff's counsel in his brief, may have been a proper instruction, yet, upon examination of the instructions given by the court, as a whole, under the facts and circumstances of this case, we find that they were, in our opinion, sufficient upon the issues raised by the pleadings and upon the evidence produced, as shown by the record.

Instruction No. 3, which was submitted by counsel for plaintiff and given by the court, is as follows:

"You are instructed that if you find by a preponderance of the evidence that the operation of such refinery materially and substantially annoys or injures or endangers the comfort, health, repose or safety of the plaintiff and his family in the use and enjoyment of said premises, or in any way renders him and his family insecure in their lives or in the use of such premises, you should find for the plaintiff.

'On the other hand, if you fail to find from a preponderance of the evidence that the operation of such refinery materially and substantially annoys or injures or endangers the comfort, health, repose or safety of the plaintiff and his family in the use and enjoyment of said premises, or in any way renders him and his family insecure in their lives or in the use of such premises, you should find for the defendant."

Which instruction, in our opinion, is a sufficient statement of the grounds upon which the plaintiff could recover in this case. This being the theory of the plaintiff for his recovery, as shown by his pleading, he is bound by this instruction, given at his own request, and it relieves other instructions given by the court from the objections urged against them by the attorney for plaintiff in his brief.

Another instruction specifically charges the jury that it was not necessary for the plaintiff to prove negligence on part of the defendant in the operation of its refinery, but that plaintiff must prove the operation of such refinery substantially impaired the comfortable enjoyment of plaintiff's premises, which instruction was given upon the request of plaintiff, and, in another instruction, asked for by plaintiff, the court instructed the jury that it could take into consideration the discomfort and annoyance of the plaintiff caused by the operation of the refinery together with the injury, or danger of injury, to the health and safety of plaintiff in the use of his premises caused by the operation thereof, and could take into consideration the injuries to his real estate, and in assessing the damages to the real estate it could award him the difference in the market value thereof from that immediately before to that immediately after the injuries were sustained, if the injuries were permanent, but, if only temporary, it could award him damages for the loss in the usable value thereof up to the time the action was filed. Counsel for plaintiff, in his brief, admits that those instructions, heretofore referred to, stated the law clearly. Having admitted this, he complains of instruction No. 8, which charged the jury that plaintiff could not recover for diminution in the value of the land, if any, caused merely by the fact of the location or proper operation of the refinery near his land, but that it was necessary for him to show that the refinery was so operated as to constitute a nuisance, and cites the case of Oklahoma City v. Vetter, 72 Okla. 196, 179 Pac. 473, in which case it was alleged a pest house was located near the home of Vetter, in which it was held that Vetter could recover under the peculiar circumstances of that case and on account of the erecting and operating the pest house for the treatment of malignant, contagious, and infectious diseases. It will be observed that, in passing upon that case, the court said that Vetter could recover for the act of the city "in erecting and operating" a hospital for contagious diseases.

In this case, under the peculiar circumstances, we cannot agree with counsel for plaintiff that the erection of the plant constituted a nuisance per se and the specific acts, complained of, for which damages are sought, are those arising from the use and operation of the plant, itself, as disclosed both by the petition and by the evidence in this case.

In the case of Kenyon v. Edmundson, 80 Okla. 3, 193 Pac. 739, where a desiccating plant, which was the only one in that vicinity, was located in near proximity to the property of plaintiff, this court said that:

"An instrumentality that is at all times and under all circumstances, irrespective of its location and environment, a nuisance is said to be a nuisance per se. There are instrumentalities, however, which in their nature are not nuisances, and whether a particular instrumentality constitutes a nuisance depends upon its surroundings, the manner in which it is conducted or managed, or other circumstances (20 R. C. L. 383). It may be, as contended by counsel for plaintiff in error, that a desiccating plant is not a nuisance per se, but in the instant case evidence was adduced showing that the location of the plant, the manner in which it was conducted, and other circumstances, rendered this particular instrumentality both a public and private nuisance."

It will be observed that this court held that to constitute an instrumentality a nuisance "depends upon its surroundings the manner in which it is conducted or managed or other circumstances," and it further held that the desiccating plant might not be a nuisance per se, but that it depended upon the evidence as to the "location of the plant, the manner in which it was conducted and other circumstances rendered this particular instrumentality both a public and a private nuisance." Then, applying this rule here, we find that the property of plaintiff, himself, was occupied as a home and was also used as a bottling plant; that it was located essentially in an oil center, surrounded by a tank farm, a switch yard, this refinery and near two other refineries and an acid plant, and that within the said town and surrounding it there were at least 20 refineries, and

that the air in that vicinity was impregnated with odors, and there were loud and unusual noises and the property, located as it was, under such surroundings and circumstances, cannot be subjected to damage from the defendant's refinery, unless, in our opinion, the defendant so carried on its business and operated its refinery as to damage the plaintiff, specially to his substantial injury in an unreasonable use of its premises in view of the locality. The defendant's refinery was not the only one that gave off odors, fumes, and smoke and the defendant's pump was not the only unusual noise that annoyed the plaintiff, and the defendant's refinery did not give off worse fumes, smoke, and odors than other similar plants located in that vicinity, and the noise of the pump certainly could not have been compared with the noise of the switch engines and shifting cars on the railroad tracks adjacent thereto.

We are, therefore, of the opinion that the instruction complained of should and must be upheld in this case, and we are of the opinion that the plant, neither in its location nor in its operation, constituted a nuisance in view of the surroundings and locality.

The proof in the case showed that there was a tank containing an unfinished product of gasoline located near plaintiff's premises, and, as testified to by plaintiff, within ten rods of his house, but the proof further showed that the finished product of gasoline was stored in tanks on the opposite side of the defendant's premises outside of the ten rod limit and there is no proof that the unfinished product is explosive, and the storing of such product, as was proven here, in our opinion, does not come within the class of explosives mentioned in the statutes at section 8927, Comp. Stat. 1921, and under the facts proven in this case, we are of the opinion that the court's instruction No. 10, relative thereto, was correct.

Another instruction complained of is that the court instructed the jury that the plaintiff had not shown any permanent damage to the fraction of an acre of land over which oil and refuse had run at the time of an overflow and had failed to prove the rental value thereof, and that being true, the jury could only allow nominal damages therefor. We are of the opinion that only nominal damages could have been rendered under the proof in this case, and that the jury, within the exercise of its rights, found that there was not any damage, and we are of the opinion that no verdict could have been

predicated upon the proof in this case as to the land.

On the question of whether the plaintiff could have mitigated the damages by digging another well, or spring, as charged by the court, it is immaterial, as we view the case, for, under the proof in this case, this spring was not polluted by any operation of the refinery, but plaintiff's water was damaged by his own act, as shown by the testimony, analysis, and report of the chemist from the State Health Department, as heretofore set forth in this opinion, for which the defendant could not be held in any way responsible.

Upon all the facts and the law in this case, we are clearly of the opinion that the plaintiff did not make out a case upon which a verdict and judgment for damages could have been awarded to him, and that the verdict of the jury was so clearly right and the judgment of the court was so clearly just and correct in this case, that we are of the opinion that the same should not be disturbed, but it should be and is hereby affirmed.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. p. 853, §2834. (2) 4 C. J. p. 858, §2836. (3) 29 Cyc. pp. 1153, 1158.