REGAN, Judge.
Plaintiffs, Mr. and Mrs. Leslie L. Borey, as surviving parents of Donald L. Borey, instituted this suit against the defendants, James R. Rood and the Pacific Indemnity Company, the collision insurer of Christopher A. Bertucci, Jr., endeavoring to recover $25,000 for the death of their son which occurred in the River Road near Marrero, Louisiana, when Bertucci’s automobile, in which Donald Borey was a passenger, collided head-on with a vehicle owned and operated by Rood at approximately the hour of 4:45 a. m. on June 14, *159 1956. The plaintiffs contended that the concurring negligence of both drivers was the proximate cause of the accident.
Defendant Rood answered and denied that he was negligent. He asserted that the accident was caused solely by virtue of Bertucci’s fault and in the alternative, pleaded the contributory negligence of Borey in that he acquiesced in Bertucci’s operation of the automobile in a negligent manner.
Defendant Pacific Indemnity Company also answered and admitted the insurance coverage of Bertucci but denied the existence of negligence on the part of its insured and averred that the accident had been caused by the sole negligence of Rood.
On April 21, 1958, almost two years later, the plaintiffs endeavored to join as a defendant Loffland Brothers Company, the employer of Rood, contending that they had recently been apprised of the fact that Rood was engaged in a mission on behalf of his employer when the collision occurred, and consequently it was vicariously liable therefor in conformity with the rationale of the doctrine of respondeat superior.
Defendant Loffland Brothers Company tendered a plea of prescription, then answered and denied that Rood was in its employ or that he was engaged in a mission on its behalf when the accident occurred; in the alternative, it pleaded the sole negligence of Bertucci.
From a judgment in favor of plaintiffs and against defendants Rood and Pacific Indemnity Company, Bertucci’s insurer, in the amount of $20,000, and in favor of defendant Loffland Brothers Company, maintaining its plea of prescription, the plaintiffs and the defendant Pacific Indemnity Company have prosecuted this appeal.
Defendants Rood and Loffland Brothers have answered this appeal and requested that the portion of the judgment finding Rood guilty of negligence be reversed.
This case was consolidated with a similar suit arising out of the same accident in order to facilitate and expedite the trial thereof. The suit referred to is entitled James R. Rood v. Pacific Indemnity Company et al., our docket number 139. In that case the plaintiff was the operator of the automobile which collided with that of the defendant’s insured and asserted that he was entitled to the stipulated sum of $10,000 for personal injuries and medical expenses incurred as a result of the aforementioned accident.
The record reveals that Bertucci, age 19, was driving in the River Road in a down-River or easterly direction, accompanied by a friend, Donald Borey, age 18. Both were students of Louisiana State University and they were engaged, respectively, in the study of geology and petroleum engineering. When the accident occurred, they were both doing summer work for an oil maintenance company.
Rood was approaching from the opposite direction, or in an up-River westerly direction. He was employed by Loffland Brothers Company as a diesel mechanic on an oil rig which was located in the Gulf of Mexico.
A short distance from the entrance to the Celotex Plant in Marrero, the two vehicles collided head-on and as a result, young Borey was fatally injured and died several hours later. Rood also sustained multiple and serious injuries.
As is usual in cases of this nature, there are disputed versions of the manner in which the accident occurred. The only witnesses to the accident were the respective operators of the vehicles, that is, Bertucci and Rood and as we will relate hereinafter, their versions are in such direct conflict so as to render a reconciliation thereof practically impossible.
Bertucci testified that he was driving at a speed of between forty to forty-five miles per hour, in his traffic lane, two to three feet removed from the center line of the *160 highway. It was not yet daylight, and a slight drizzling rain was falling. He and his companion were not conversing prior to the accident and he was observing the .roadway in front of him; he could see ahead a distance of about 300 to 400 yards where a sharp curve occurred in the roadway, and that he was totally unaware of the Rood vehicle until he suddenly “saw headlights shining and very bright in my lane.” He was unable to estimate the speed of the approaching vehicle, but believed that it “was traveling at a great rate of speed.” In consequence thereof he was only afforded sufficient time to apply his brakes and therefore was unable to avoid the collision by driving off of the roadway or onto a six-foot shell shoulder which paralleled his lane of traffic.
Rood, on the other hand, related that it was daylight and therefore he had turned the headlights off. He said that prior to the collision he was driving at a speed of about thirty miles per hour. He observed the Bertucci vehicle some 200 to 300 yards away moving about thirty-five miles per hour; that this car started easing over in his lane when it was about 100 or ISO yards away, and that although he observed the driver thereof, Bertucci, conversing with his passenger and not paying close attention to the .roadway, he nevertheless assumed that Bertucci would become aware of his perilous position and re-enter the proper lane. When he realized Ber-tucci was not going to follow the course as anticipated, he released the accelerator and steered the vehicle over to the curb abutting the levee which afforded no shoulder; however, he continued to move at a speed of about thirty miles per hour, and he also neglected to apply either the brakes or to sound the horn of the vehicle.
The foregoing résumé of the testimony reveals that only questions of fact were posed for the trial court’s consideration. The judge thereof obviously concluded that the operators of the .respective vehicles were negligent, and therefore reasoned that the proximate cause of the accident was the concurrent negligence of both drivers.
The initial question which this appeal has posed for our consideration is whether those findings of the trial judge and the law applied thereto are so erroneous and unsupported by the evidence as to warrant a reversal by us.
We are of the opinion that no useful purpose would be served by indulging in a protracted discussion of the foregoing testimony or by endeavoring to reconcile the respective litigants’ version of the manner in which the head-on collision occurred. The trial judge reasoned that neither driver was maintaining a proper look-out and therefore their concurrent negligence was the proximate cause of the accident. Our analysis of the .record convinces us that the evidence inscribed in the record preponderates in favor of this conclusion and the judgment relating to this aspect of the case is therefore correct.
The secondary question posed for our consideration relates to the trial court’s maintenance of the plea of prescription entered on behalf of the defendant Loffland Brothers Company. The pertinent facts are these:
It will be recalled that the accident occurred on June 14, 1956. On March 1, 1957, the plaintiffs filed suit against Rood and Pacific Indemnity Company, Bertucci’s collision insurer. On March 19, 1958, shortly before this case was fixed for trial, Rood informed plaintiffs’ counsel[1] that he had been in the employ of Loffland Brothers Company at the time of the collision since he was carrying some mail for the Company, which he was to deposit in any post office “on the West Bank,” in conformity with instructions given to him by the Company foremen aboard the rig. The plaintiffs, predicated on this information, *161 then sought to join Loffland Brothers Company as a party defendant on April 21, 1958, which was almost two years after the collision.
Loffland Brothers, of course, denies and advances plausible reasons in support thereof, that Rood was acting within the scope of his employment when the collision occurred between the Bertucci and Rood vehicles, and a large portion of the record is embellished with disputations ad infinitum in connection with the subject of their relationship. For the purposes of brevity and the consideration of the validity of the plea of prescription, we shall pretermit a discussion thereof and assume arguendo that Rood was acting within the scope of his employment by Loffland Brothers when the accident occurred.
Plaintiffs’ counsel readily concedes that the plea of prescription by Loffland is good unless it was interrupted by the facts which he developed herein. The record in connection therewith reflects that Rood never informed plaintiffs’ counsel on his own until March 19, 1958, that on June 14, 1956, the day of the accident, that he was carrying some letters for Loffland Brothers, which he was instructed to mail. Rood’s[2] laborious and nebulous reason for delay in conveying this information was because he wanted both to protect his employer and to avoid being placed on his employer’s “accident prone” list so as not to jeopardize his job.
Plaintiffs’ counsel likewise concedes that Loffland Brothers never concealed any information nor suppressed any facts which were designed to obstruct, impede or prevent a suit from being filed against it. He merely contends that Loffland unwittingly, because of Rood’s actions, succeeded in concealing from the plaintiffs their cause of action against Loffland.
Predicated on the foregoing facts, the plaintiffs insist that they have exercised due diligence in instituting a suit against Loffland Brothers since it was impossible for them to assert a cause of action against Rood’s employer for the reason that they were unaware, until March 19, 1958, that Rood was acting within the course and scope of his employment when the accident, occurred.
While plaintiffs assert that they did not possess knowledge of the fact that Rood had some of his employer’s mail in the vehicle when the accident occurred, the record reveals that this information could very easily have been obtained by either plaintiffs or their counsel through the medium of simple investigation or the use of the discovery procedure provided for in this state.
The record likewise reflects that the two deputy sheriffs who investigated the accident, the operator of the wrecker service car who removed the vehicles from the highway, the defendant Rood and his wife all knew that there was among other letters some Loffland Brothers mail in the rear seat of the Rood automobile which remained there following the accident; therefore practically everyone connected with the accident possessed knowledge of the presence of the mail therein, and as we have said, either investigation, discovery, or the actual institution of a suit against Loffland Brothers Company since the plaintiffs knew that Rood was in general employed by it, would have enabled the plaintiffs to learn the facts they say they were deprived of by Rood until March, 1958.
In a relatively recent case[3] involving similar principles, the Supreme Court of this state rationalized thus:
“ ‘ * * * Statutes of limitation are founded on public policy and are *162 favored in the law. Mere ignorance of one’s rights will not toll the statute of limitations. Concealment by defendant only by silence is not enough. He must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry. There must be reasonable diligence on the part of plaintiff and the means of knowledge are the same in effect as knowledge itself. * * * We know of no decision, either of controlling authority or persuasive, holding that mere ignorance on the part of the creditor will toll the statute.’ ”
In view of what we have said herein-above, we are of the opinion that the trial court very properly maintained the plea of prescription. The rule of prescription which serves a good and useful purpose in the structure of our legal system would suffer more unjustified erosion if we were to reason otherwise.
Counsel for the plaintiffs requests that the award of $20,000 in their favor for the death of their son be increased to the sum of $25,000.
The record discloses that Donald Borey was an industrious, energetic and intelligent youth of eighteen years of age who was enrolled in Louisiana State University. He was pursuing the study of petroleum engineering and had completed his freshman year therein. When his untimely death occurred, he was engaged in summer work for an oil company where he was gaining both practical experience and money to defray his college expenses for the ensuing year.
He participated in athletics, was active in community and church affairs and was devoted to his family; in short, the record discloses that he possessed an unusually well-rounded personality, and both he and his parents possessed every plausible reason to anticipate a prosperous and successful future, practically all of which was before him when he died.
We are, therefore, of the opinion that the award should be increased to the sum 'of $25,000 which we believe, since that is the only amount prayed for, may be adequate, insofar as money may make it so.
For the reasons assigned, the judgment of the lower court insofar as it awarded to the plaintiffs the sum of $20,000 is amended so as to increase it to the amount of $25,000, and as thus amended, it is in all other respects affirmed. The defendants are to pay all costs.
Amended in part; affirmed in part.

. Counsel for defendant Rood stipulated he was unaware of the mail in his client’s possession until March 3, 1958.

. Counsel for both Rood and Loffland, in the course of oral argument informed this court that the compensation suit which Rood had instituted against Loffland is still pending, and therefore the question of whether Rood was acting within the scope of Ms employment when the accident occurred is significant and of personal importance to him.

. Martin v. Mud Supply Company, 239 La. 616, 119 So.2d 484 (1960).