SAMUEL, Judge.
Plaintiff, a subcontractor of the defendant on work being performed for the Dow Chemical Corporation, brought this suit to recover $16,364.67, the alleged balance due under its subcontract. Defendant answered and filed a reconventional demand for damages allegedly resulting from the untimely filing of a lien against it and Dow. After trial on the merits the district court dismissed plaintiff’s suit and dismissed defendant’s reconventional demand as of non-suit. Plaintiff has appealed from this judgment. Defendant has not appealed nor answered the appeal taken and the sole matter before this court is the judgment dismissing plaintiff’s suit.
The record reveals that the defendant was interested in bidding on a subcontract which called for the installation of brine facilities at the Dow plant in Assumption Parish. The work to be performed involved excavations for, and the construction of, storage pits. In connection therewith defendant felt that it might be necessary to do certain dewatering work, i. e., the keeping dry of the pits by means of the installation of well points and the pumping out of sub-surface water for the purpose of keeping the water level down while defendant was excavating, pouring concrete, etc. Accordingly it requested a bid or offer from plaintiff corporation for this dewater-ing work. On May 28 plaintiff made such an offer, in writing, for the price of $18,-757.00 for a period of 30 calendar days or less beginning with the initial pumping operation, plus $295.00 for each calendar day thereafter. Work under the subcontract here involved was begun by plaintiff on June 20, and its well point system was installed. The pumping operation began on June 26 and plaintiff’s work was completed on September 24, exceeding the 30 day' period mentioned in the offer and resulting in an additional charge, under the penalty clause and over and above the base offer figure, of the amount sued for, which latter apparently includes some charges for insurance and a credit for the cost of one of: defendant’s watchmen used on the ■ job. Defendant paid the sum of $18,750.00 but denied liability for the amount claimed by this suit.
It is plaintiff’s contention that its written offer was orally accepted by defendant and’ the former’s work was performed under the resulting contract. It is defendant’s contention that the written offer was not accepted, that an oral counter offer was made by defendant to have the work performed in its entirety for the price of $18,750.00, without a penalty clause, and that this counter* offer was orally accepted by plain-' tiff.
The evidence consists of various documents offered by both sides and the testi-'' mony of two plaintiff witnesses, the president of plaintiff corporation and an engineer for Dow, and two defense witnesses, the president and the vice-president of defendant corporation.
The only testimony given by the Dow engineer related to which of the two corporate litigants had more control over the job. We consider this factor unimportant because the defendant, it-df a subcontractor, was under the control of the prime contractor and the 'Owner and, as the engineer testified, the weather was the controlling factor in any event. In addi *714 tion, the matter of greater or lesser control is of little or no probative value in deciding the question of which contract actually was entered into.
The president of plaintiff corporation testified that no counter offer was made and that, after the necessity for dewatering was finally determined by defendant’s president and vice-president in this witness’s presence between June 7 and June 20 (subsequent to the offer), he was instructed to proceed with the performance of the work under the terms contained in the written offer.
The testimony of both defendant witnesses is that, subsequent to the receipt of the offer and prior to June 7, they contacted the president of plaintiff corporation, examined the site and came to the conclusion that dewatering was necessary. At that time the oral contract was entered into. The president of defendant corporation insisted on a fixed price for the entire job and, although he thought the same was high, agreed to pay $18,750.00 for the work to be performed by defendant without reservation, limitation or penalty clauses of any kind. According to the defense witnesses this was the counter offer and resulting contract under which plaintiff performed the work. •
It is clear from the. record that defendant’s bid for its subcontract with L. E. Farley, the prime contractor, was in the amount of $282,750.00 and an estimate of cost prepared in connection with making the bid contains an item relative tq de-watering at the flat figure of $18,750.00. This estimate was drawn up on May 27. The bid was accepted and the contract with Farley entered into on June 7.
Plaintiff points to certain apparent inconsistencies in the testimony of defendant’s two witnesses which, it argues, show that their testimony was not correct and that the contract entered into was' in conformity with plaintiff’s written offer. These inconsistencies are: that defendant could not have used the figure $18,750.00 for dewatering costs in an estimate made on May 27, if, as was testified to by the defense witnesses, that figure was procured at a meeting with plaintiff’s president which took place after May 29; that the price of $18,750.00 was used in the estimate instead of $18,757.00, which latter figure, even according to defendant’s witnesses, was agreed upon at the meeting claimed by defendant to have taken, place; that the testimony of Kilgore, defendant’s vice-president, to the effect that prior to June 7 he told the president of plaintiff corporation to go ahead with the work, was an impossibility in view of the fact that defendant’s subcontract with Farley was not entered into until June 7; that a letter written by defendant’s Houston counsel to plaintiff demanding cancellation of the lien, although it discusses events prior to May 28, makes no mention of a counter offer, a meeting of the parties, or the acceptance of a counter offer, after May 28, and refers only to a meeting before that date; and that plaintiff’s invoices, which were duly paid by the defendant, all refer to a contract dated May 28.
While we feel that inconsistencies in testimony can and should be considered in arriving at the true facts involved, we are also of the opinion that quite frequently they are not, and should not be, controlling. In some cases the complete absence of inconsistencies can be sufficient in itself to create a suspicion as to the truth or correctness of the testimony. Here it is quite apparent that the transaction between the litigants was carried on in an extremely loose and unbusinesslike manner. To enter into a contract involving more than $18,-000.00, according to defendant, and more than $35,000.00, according to plaintiff, without reducing the same to writing, or at least to some firm and easily proved understanding, can be described in no other manner. This may be explained in part by the fact that the presidents of the two corporate litigants were brothers and, at the time the contract was entered into, defendant actually owned 50% of the stock of plaintiff.
*715 A careful examination of the record convinces us that the inconsistencies of which plaintiff complains should not be controlling. It is quite clear that the evidence adduced does not cover all of the transactions relative to the contract with which we are here concerned. There was an earlier rough estimate, made by plaintiff and mentioned only incidentally, for the price of $12,000.00 and there must have been other prior discussions. Nor can there be any question but that a meeting did take place among the three representatives of the two corporations at which the contract could have been entered into.
It is true that defendant could not have included in its estimate of May 27 the exact contract price it obtained from plaintiff on a later date. But it is an uncontradicted fact that the figure of $18,750.00 was actually used and there must have been some basis therefor. The estimate was made up before plaintiff’s written offer was submitted but after plaintiff’s rough estimate had been made and, we believe, after other discussions had taken place.
The $7.00 difference between plaintiff’s written offer of $18,757.00 and the figure $18,750.00, the amount claimed by defendant as the contract price, is inconsequential and was satisfactorily explained by defendant’s president in his testimony.
The discrepancy in Kilgore’s testimony is actually of a minor nature and, although we feel there is no need to point the same out in detail, such minor discrepancies are to be found in the testimony of plaintiff’s president.
The letter from the Houston counsel is of no particular significance. It does discuss many things, including the previous excellent relationship between the brothers, but it makes no attempt to set out all the facts and issues involved.
The invoices referred to are also of no real significance. In addition to being self serving, they are dated May 28 and it is quite clear from all of the testimony by both sides that the contract could not possibly have come into existence until after that date.
Essentially the instant case involves only a question of fact dependent upon the credibility of the witnesses. We find no error in the judgment.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.