W. F. McPIKE and Myron McPike, as Administrators of the Estate of Vickie Lee McPike, Deceased, Appellants (Plaintiffs below),

v.

Steven Thomas SCHEUERMAN, Appellee (Defendant below).

No. 3385.

Supreme Court of Wyoming.

Jan. 18, 1965.

———◆———

Scott & Joffe and Harold Joffe, Worland, for appellants.

Henderson, Godfrey, Kline & Uchner and Paul B. Godfrey, Cheyenne, for appellee.

Before PARKER, C. J., and HARNS-BERGER and GRAY, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

Mr. and Mrs. McPike, as administrators of the estate of their deceased 14-year-old daughter, brought an action alleging that she came to her death by reason of her being struck by an automobile which defendant drove in a careless and negligent manner and seeking $1,682.32 in special and $25,000 in general damages. The case was tried to a jury which rendered a verdict for plaintiffs and against the defendant in the amount of $3,500, whereupon plaintiffs filed a motion for new trial on the grounds that the verdict of the jury had awarded inadequate damages, appearing to have been given under the influence of passion and prejudice, and the verdict was not sustained by sufficient evidence and was contrary to law. No order was entered within the requisite time, and under the provisions of Rule 59(f), W.R.C.P., the motion was deemed denied.

Plaintiffs have appealed, contending that the verdict is not sustained by sufficient evidence, is contrary to law and that the damages awarded are inadequate. In general, the facts are not disputed. The testimony showed that on December 17, 1962, about 4 p. m., deceased, with a friend, Patty

Cooper, was crossing Big Horn Avenue at Twelfth Street in Worland. They were proceeding northerly in a marked cross-walk for pedestrians; a portable school sign in the middle of the street stated, "School Drive Slowly." The avenue was seventy feet wide between curb lines, with two driving lanes going each way. The prescribed speed limit was twenty miles per hour. Defendant, fifteen years old, was driving west on the avenue in his father's automobile at a speed which was variously estimated from twenty to thirty miles per hour. With him in the car were two boy friends, fifteen and sixteen years of age. According to defendant, he first observed the girls when he was 120 feet away and traveling about twenty or twenty-five miles per hour. They were in the crosswalk, at the position of the sign, halfway across the street. Defendant was then in the left or inside lane. He said he thought that the girls would continue to walk and he would be able to go by, but the girls separated, the friend going on across the street, Vickie McPike turning around and looking as if she was going to go in the other direction so he attempted to go between them but when he got close to them she started to go toward the girl friend so he swerved to his left and tried to miss her but did not, striking her with the front of the car. He said he did not attempt to slow up or put on the brakes when he first saw them because there was nothing unusual about it, that as he proceeded down the street in the middle lane—straddling it a little bit—Patty Cooper took off to his right and Vickie McPike turned to his left, and it seemed she was going the other way, so he turned sharply to his left and, while he was not positive, thought he stepped on the brake at that time but it did not catch at first. The speed of the car at and immediately before the impact was not established with definiteness, neither defendant nor any of the other witnesses having purported to have looked at the speedometer. He said that he was going twenty to twenty-five but Ernest Cook, a spectator, who

purported to have tested cars on a track for General Motors, estimated that defendant was going about twenty-five. Kent Loveland, one of defendant's passengers, believed the speed to be about thirty but later on cross-examination in response to the question, "It could have been twenty or it could have been thirty," answered, "Yes." Loveland said that he felt the car accelerate when he first saw the girls 120 feet from them. Greg Ward, another passenger, said he would judge the speed was about thirty.

It is perhaps unnecessary to discuss appellee's contention that there was uncontroverted evidence of negligence on the part of deceased which evoked a sympathy verdict from the jury. At most, such a statement is only a conclusion. Furthermore, according to any reasonable analysis, and even based on the evidence of defendant himself, he was traveling at a speed and in a manner that was improper and negligent under the circumstances, making no attempt to stop for pedestrians in a marked crosswalk when there was a sign clearly showing. Moreover, he said that he saw the girls and recognized Vickie McPike and admitted he was familiar with the area and the crosswalk. The jury under the instructions was entitled to say whether or not there was contributory negligence on the part of deceased and obviously determined there was none. As stated in 2 A.L.I. Restatement, Torts, § 470 (1934), "The fact that the plaintiff is acting in an emergency not created by his own antecedent negligence is a factor to be taken into account in determining whether his conduct is free from contributory negligence." Amodei v. Saunders, 374 Pa. 180, 97 A.2d 362, 363–364, is in point:

"The jury was also warranted in concluding that the decedent was free of contributory negligence. The fact that Mrs. Scheeler testified that when Amodei [decedent] reached the middle of the street he 'moved faster' does not say that he contributed to the happening of the tragedy. The accelerated movement mentioned by the witness is not

to be confused with a 'darting out' case where the traffic victim is depicted as dashing out from a haven of safety to a place of obvious danger. Amodei had already traversed one-half of the intersection when he 'moved faster.' This movement could well have been his attempt to avoid the onrushing vehicle about to crush him beneath its wheels. The law does not require that in a moment of extreme peril and overwhelming fright not self-induced, a pedestrian should do the precise thing which a posthumous investigation decides would have been the perfect course to follow."

See 65 C.J.S. Negligence §§ 118 and 119; 2A Blashfield, Cyclopedia of Automobile Law and Practice, §§ 1242, 1411, 1423.

■ Plaintiffs contend that Rule 59(a) (6), W.R.C.P., " * * * a new trial may be granted for any of the following causes: That the verdict, report or decision is not sustained by sufficient evidence or is contrary to law" is properly interpreted to allow a trial court to grant a new trial in the case of an inadequate verdict. They cite several cases which are persuasive on the point: Harper v. Superior Air Parts, Inc., 124 Cal.App.2d 91, 268 P.2d 115; Adams v. Hildebrand, 51 Cal.App.2d 117, 124 P.2d 80; Franklin v. Bettencourt, 16 Cal.App.2d 511, 60 P.2d 1017; Peri v. Culley, 119 Cal. App. 117, 6 P.2d 86; Mischel v. Vogel, N.D., 96 N.W.2d 233; Deschane v. McDonald, N.D., 86 N.W.2d 518; Olson v. Thompson, N.D., 74 N.W.2d 432. Section 657, Cal.Code Civ.Proc., is substantially similar to the portion of the rule here in issue, "The verdict may be vacated and any other decision may be modified or vacated, in whole or in part, and a new or further trial granted on all or part of the issues, on the application of the party aggrieved, for any of the following causes, materially affecting the substantial rights of such party: * * * 6. Insufficiency of the evidence to justify the verdict or other decision, or that it is against law." In North Dakota it is said that the right of the court

to grant a new trial for an inadequate verdict is based upon common law. More importantly, Ohio, whose statute we purported to follow in adopting § 3–3401, W.C.S.1945, from which our Rule 59(a) was taken, has settled the matter beyond question. The leading case on the subject, Toledo Rys. & Light Co. v. Mason, 81 Ohio St. 463, 91 N.E. 292, 293, 28 L.R.A., N.S., 130, said:

"It seems to have been assumed in some cases that at common law, in an action for damages sounding in tort, a court might set aside the verdict of a jury when it was so excessive that it appeared to have been influenced by passion or prejudice, but that it was powerless to disturb one that was inadequate. The fact was, however, and the doctrine now generally accepted is, that the verdict of a jury is subject to the supervision of the court, whether too large or too small. * * *"

It is unnecessary to cite the cases which have followed this decision. We think the court had both the right and the duty to grant a new trial if it considered that under the facts and circumstances disclosed at the trial the award was inadequate.

■ We review the situation to ascertain whether or not the trial court in this instance abused its discretion in failing to grant a new trial because the damages were inadequate. Some evidence was adduced concerning the services of deceased in her parents' store, waiting on customers, general work, and stacking. There was a statement, over the objection of defendant, that pay for such services was a dollar an hour and that she perhaps worked twenty to twenty-five hours a week, but it was not indicated how long this had continued and moreover the store was sold shortly after deceased's death in accordance with negotiations which had been taking place prior to the accident. There was some testimony that the daughter cooked and took care of the house when the mother was busy, but this was indefinite as to the extent of such activities. Under the unchallenged instruc-

tions, the trier of fact was told that plaintiffs were entitled to recover for loss of comfort, care, advice, and society of the decedent as an element of damage and reminded that these factors could not be measured in dollars and cents but they were to arrive at the proper damages by the exercise of sound discretion. For a reviewing court to say that the jury arrived at an improper result and that the court in declining to grant a new trial abused its discretion, it would be necessary to have some criteria upon which to base the criticism and such has not been presented. The cases which have been submitted to us, many of which are discussed at Annotations, 48 A.L.R. 817 and 14 A.L.R.2d 550, are of little assistance. For instance in Russell v. Cirillo, 17 A.D.2d 1005, 234 N.Y.S.2d 67, the order to raise the judgment was occasioned by the fact that there was an inadequate appraisal of "chances of pecuniary benefit" to the parents of a sixteen-year-old boy. To a similar effect are all of the cases called to our attention with the exception of those from Louisiana, Borey v. Rood, La.App., 140 So.2d 158, and Burnaman v. LaPrairie, La.App., 140 So.2d 710, where the court in each instance raised the amount without giving any concrete basis upon which any award should be made. Their philosophy is expressed by the statement at 140 So.2d 712:

> " * * * In assessing the amount of damages, each case is to be determined on its own facts, with the desire however, for the attainment of some degree of uniformity in cases involving similar injuries. * * * Whenever possible, assessment of damages should be in accordance with the most recent and similar cases. * * *"

We are doubtful if we are in a position to apply any such rule, especially in view of the fact that other cases are not presented to us. We revert to the instructions previously mentioned, that recovery for the loss of comfort, care, advice, and society of decedent is an element of damage which is difficult to measure and within the sound discretion of the trier of fact. Had the jury given a larger amount consistent with that asked in the complaint, justice may have been better served, but this court is in no position to substitute its judgment for that of the jury and the trial court without a compelling reason, which is here lacking.

Judgment is affirmed.

Mr. Justice McINTYRE, not participating.