Mike **MULLIN**, Appellant (Defendant below),

v.

**STATE** of Wyoming, Appellee
(Plaintiff below).

No. 4076.

Supreme Court of Wyoming.

Jan. 24, 1973.

Edward P. Moriarity, of McClintock, Mai, Urbigkit & Morarity, Cheyenne, for appellant.

Clarence A. Brimmer, Atty. Gen., Bert T. Ahlstrom, Jr., Spec. Asst. Atty. Gen., Cheyenne, Frank J. Jones, County Atty., Wheatland, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN and GUTHRIE, JJ.

Mr. Justice McEWAN delivered the opinion of the court.

This is an appeal from a conviction of the defendant in the district court of Platte County, Wyoming, sitting with a jury, of a charge of being an accessory before the fact to grand larceny. The amended information charged that the defendant did unlawfully and feloniously counsel and encourage one Richard Anderson to commit the felony of grand larceny in violation of § 6–14, W.S.1957 (Accessory before the fact), and § 6–132, W.S.1957 (Grand larceny). The jury found the defendant guilty as charged, and the judgment and sentence of the trial court was that the defendant—who was then 17 years of age—be imprisoned and confined in the Wyoming State Industrial Institute for a period of not less than 15 months and not more than 18 months.

The facts of the case for the most part are not in dispute. The defendant, who was 17 years of age on November 20, 1970, the date of the larceny, lived at Wheatland, Wyoming. At about 5 p. m. on that day he invited three of his friends to view a pickup-camper which he had recently acquired and which was parked on a city street in Wheatland. While they were at the camper they observed two men walk by, one carrying a case of whiskey and one a case of beer, which the men placed in a truck belonging to one of them. The defendant and his friends discussed taking the whiskey. The defendant then took one of the boys home, and he and the other two boys returned to a cafe where they had been prior to going to look at the defendant's · pickup-camper. Another acquaintance of theirs, Richard Anderson, came over to their booth and one or more of the three told him of the case of whiskey. The defendant said he only told Anderson where the truck was parked, but that Pat Wilhelm encouraged Anderson to steal the whiskey, under which plan Anderson and Wilhelm would each receive one-half. Anderson testified that the defendant did no more than tell him where the truck was parked, but Wilhelm testified that both he and the defendant encouraged Anderson to commit the theft. The parties then left the cafe and apparently went their respective ways.

Later that same day Anderson took the case of whiskey from the truck and gave eight of the twelve bottles to Wilhelm. That evening Wilhelm and three other young men went to a house where he once lived, consumed some of the whiskey, and stayed there until 7 a. m. the next morning. Later that day Wilhelm gave the defendant three bottles of the stolen whiskey. Law enforcement officials made inquiry of the defendant concerning the whiskey and he showed them where he had

placed the three bottles he had received. The defendant was charged in justice of the peace court with being in possession of alcoholic beverages while under the age of 21 years and was found guilty.[1]

Thereafter, on December 4, 1970, the deputy county and prosecuting attorney filed a petition in the juvenile court alleging that the defendant had received stolen property, knowing the same to have been stolen.[2] On or about February 18, 1971, the defendant through his attorney filed motions for a bill of particulars, suppression of evidence, and for dismissal.

On March 1, 1971, a criminal complaint was filed charging the defendant with feloniously counseling and encouraging Richard Anderson to commit grand larceny in violation of § 6–14, W.S.1957.[3]

On April 13, 1971, the prosecutor filed a motion to dismiss the petition in juvenile court, and on that same day an order was entered dismissing the petition. On September 30, 1971, the matter came on for trial, and on October 1, 1971, the jury found the defendant guilty as an accessory before the fact.

On October 12, 1971, the defendant filed a motion for judgment of acquittal, or, in the alternative, a motion for a new trial, which motion was overruled by the trial court. On November 12, 1971, judgment and sentence was made by the court and the defendant filed a notice of appeal. On December 10, 1971, notice of appearance of counsel was filed by Edward P. Moriarity, the defendant having been represented in the juvenile case and the criminal action by Mr. Phil White, Jr. of Cheyenne.

The defendant in his brief enumerated seven points upon which he relied for reversal:

1. Appellant contends that due to the fact he was convicted in the justice of the peace court for substantially the "same offense," the reprosecution in district court constituted double jeopardy.

2. The district court in Platte County did not have jurisdiction over this matter, since it was originally instituted in the juvenile court of Platte County and was improperly transferred from juvenile court into district court without due process.

3. The court erred in failing to suppress the defendant's statement given to the county attorney outside the presence of his parents and while he was under arrest as a juvenile, since these statements are not admissible in later adult proceedings.

4. Appellant contends that the court erred in allowing the State to question alleged co-participants about their conviction and sentencing for charges which grew out of the same factual situation.

5. Appellant was denied due process and a fair trial because of erroneous instructions which were given and because of a refusal of instructions requested by defense counsel.

6. The improper and inflammatory statements made by the county attorney in his closing argument, resulted in the denial of due process and a fair and impartial trial to the appellant.

7. The court erred in failing to grant the defendant's motion for acquittal and in the alternative, a motion for new trial.

*Double Jeopardy*

█ The defendant argued that he had been previously convicted of substantially the "same offense" in justice of the peace court and he could not be tried again in

---

1. While the record does not show the statute under which the defendant was charged it apparently was for violation of § 12–33(c), W.S.1957 (1971 Cum.Supp.).

2. At that time the "Juvenile Court Act" of 1951, §§ 14–97 to 14–115, W.S.1957, C. 1965, was in effect.

3. Section 6–14 provides: "Every person who shall aid or abet in the commission of any felony, or who shall counsel, encourage, hire, command, or otherwise procure such felony to be committed, shall be deemed an accessory before the fact, * * *."

the district court. The "minor in possession" offense is not the same offense as "accessory before the fact" nor does it merge into or become an included offense. In Loddy v. State, Wyo., 502 P.2d 194, we discussed the question of the same or similar offense and set forth a test to determine whether there was a merger or if one offense was included in another. There we said that one offense is necessarily included in another if it is impossible to commit the greater without also having committed the lesser. Here it is obvious the defendant could have been an accessory before the fact without having been a minor in possession.

### Jurisdiction

■ The defendant argued that the district court did not have jurisdiction because the action was originally brought in the juvenile court, and the matter was improperly transferred from juvenile court to the district court without due process.

He contended that under the Juvenile Court Act then in effect there was no provision concerning the procedure for the transfer of a case from juvenile court to the district court.[4] Actually, in this case there was not a transfer as such—there was a new criminal action filed in the district court and the juvenile proceedings were dismissed.

In any event, the pertinent portion of the "Juvenile Court Act" of 1951, then in effect, provided for concurrent jurisdiction of the juvenile court and the district court, and for dismissal, assignment to the district court, and termination of jurisdiction by the juvenile court. Section 14–101, W.S.1957, C.1965, said the legislature intended the provisions to be cumulative and stated:

"Nothing herein contained shall be construed as repealing or altering the other procedures now provided by law for criminal cases involving a child nor cases brought under other statutes provided for disposing of vicious or incorrigible children as in such other statutes defined nor adoption proceedings, it being the legislative intention to make available the procedures herein provided in addition to the other methods and procedure by law provided for persons made subject to the procedures of this act [§§ 14–97 to 14–115]. * * *"

Section 14–109(d), W.S.1957, C.1965, set forth the jurisdiction of the juvenile court as follows:

"The jurisdiction of the court shall terminate upon the child's twenty-first birthday, provided that the court may dismiss the petition, return or assign the case to the district court or otherwise terminate its jurisdiction at any time. * * *"

The defendant reasoned that the trial court should have followed the procedures as outlined in the present Juvenile Court Act wherein § 14–115.38 provides that the juvenile court may, in its discretion at any time prior to the adjudicatory hearing, order that a transfer hearing be held to determine whether the matter should be transferred to another court having jurisdiction of the offense charged for criminal prosecution as by law provided. However, the Juvenile Court Act of 1971 was not then in effect. The effective date of the Act pursuant to § 8–22, W.S.1957, was 90 days after adjournment of the legislature, making the effective date May 21, 1971. Section 14–115.3 states:

"* * * This act [§§ 14–115.1 to 14–115.44] shall not apply retroactively such as to invalidate proceedings had under the Juvenile Court Act of 1951, but shall apply to further proceedings in juvenile matters pending on the effective date hereof."

The defendant cited several cases which he said stood for the proposition that once a case was filed in juvenile court it could

---

4. Sections 14–97 to 14–115, sometimes referred to as the Juvenile Court Act of 1951, were superseded by the Juvenile Court Act of 1971, §§ 14–115.1 to 14–115.44, W.S.1957 (1971 Cum.Supp.).

not be transferred to another court without certain procedural safeguards. Among the cases cited was Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84. However, the basic facts in that case were different from the case at hand. The Kent case arose in the District of Columbia, which had a Juvenile Court Act allowing the juvenile court to waive jurisdiction over the juvenile after a full investigation and hearing. Although our present Juvenile Court Act provides for such procedure we cannot read such requirement into the 1951 Juvenile Court Act.

The juvenile court and the district court properly acted within the statutory provisions then in effect. The legislature has the exclusive and inherent power to prohibit and punish any act as a crime, and to designate jurisdiction provided it does not violate constitutional restrictions.

### Suppression of Defendant's Statement

 The defendant gave a statement to police officers which was transcribed, read by him, and signed. He was given the Miranda warnings. He argued, however, that he was a juvenile and the statement was made without his parents being present and it was therefore inadmissible. We think the fact that the juvenile's parents were not present would not per se render his statement inadmissible, but is only one of the elements to be considered by the trial court in determining if the statement was voluntarily made by the juvenile who knew and understood his rights. Jarrett v. State, Wyo., 500 P.2d 1027 at 1031; State v. Hardy, 107 Ariz. 583, 491 P.2d 17–18, and State v. Raiford, Or.App., 490 P.2d 206 at 208. The question was fully considered by the trial court in a hearing on the defendant's motion to suppress. The trial court made the following comment at the hearing:

"Well, it is the Court's observation too, that this boy is really not a soft child of any sort. He is a big, mature man in spite of his age. He is married. He testified before the Court. He seemed intelligent to the Court. He seemed to know all about his rights and what he could do and what he couldn't do. This fellow is—while he is a young man, he is mature beyond his years and I can't see that the presence of his parents really made much difference. And he is self-sufficient."

The defendant made no argument that he did not understand his rights or that the statement was anything other than voluntary, but merely objected on the grounds that his parents were not present. It also appears from the record that the defendant was called as a witness on his own behalf and testified on direct examination to all the pertinent matters as contained in the statement. Therefore, even if it had been error to admit the statement, such error would have been harmless.

### Questioning of Alleged Co-participants

 The defendant properly noted that it was incumbent upon the prosecution to establish beyond a reasonable doubt that Richard Anderson committed the crime of grand larceny to support the conviction of the defendant of the crime of accessory before the fact. He also pointed out that the trial court so instructed the jury. He argued, however, that the record did not clearly show from the testimony of Anderson and Wilhelm that Anderson in fact stole the whiskey, but that there was merely a conclusion drawn from Anderson's testimony that he had pled guilty to grand larceny. We need not consider the question raised by the defendant as to whether or not a mere admission of a plea of guilty will establish that a crime was committed. The record clearly shows that Anderson admitted he committed the crime. He was asked, without objection, if he took the whiskey and he replied "Yes." He then testified what he did with it, and outlined other details. There was, therefore, ample evidence aside from any guilty plea to support the jury's finding that Richard Anderson stole the liquor.

### Instructions

 The trial court's refusal to give requested instructions and the giving of

certain instructions was cited by the defendant as constituting prejudicial and reversible error. He complained of the court's failure to give some seven requested instructions, and the giving of three instructions. The defendant recognized that his failure to state distinctly the matter to which he objected and the ground of his objections means that, absent some compelling reason, this court may not consider the question on appeal. Rule 51, W.R.C.P., and Alcala v. State, Wyo., 487 P.2d 448, reh. den. 487 P.2d 467, cert. den. 405 U.S. 997, 92 S.Ct. 1259, 31 L.Ed.2d 466, reh. den. 406 U.S. 911, 92 S.Ct. 1613, 31 L.Ed.2d 823. The defendant gave no justifiable reason for departure from the well established and often enunciated rule. We have, however, examined the instructions refused and those given and find no fundamental error. It appears that the jury was properly instructed on the law of the case.

### Closing Argument of County Attorney

The defendant set forth in his brief quoted portions of the county attorney's closing arguments to the jury which he contended were improper and constituted prejudicial error. There is no doubt that certain of the comments of the prosecutor were improper. He discussed matters that were not in evidence, and there was, therefore, departure from the record.

The defendant in his argument completely ignores the fact that no objection was made to the remarks of the county attorney. We are therefore left to our own research to determine what effect such failure to object has upon the question, and, as a consequence, the defendant is in no position to complain if our reasoning is not as fully developed as he may wish. There are several Wyoming cases concerning improper conduct of counsel in closing argument, none of which was cited by the defendant. The State argued that the time-honored rule adhered to by this court and universally followed is that it is too late after a verdict has gone against the defendant to raise objections not made at the time of trial. We have so held in several Wyoming cases. Bennett v. State, Wyo.,

377 P.2d 634; Cavaness v. State, Wyo., 358 P.2d 355, and State v. Spears, 76 Wyo. 82, 300 P.2d 551. The rule, however, as laid down in a 1924 Wyoming case, State v. Wilson, 32 Wyo. 37, 228 P. 803, modifies the general rule. Our examination of other cases and authority convinces us that the Wilson case sets forth the correct rule. There we said at 809:

> "* * * While there may be cases where the misconduct of such prosecuting attorney is so flagrant that the court would be warranted to reverse, even in the absence of such objections, the general rule is that the failure to interpose timely objections, giving the trial court an opportunity to make a ruling and cure an error, if possible, will be treated as a waiver. * * *"

Applying the Wilson rule we cannot say the misconduct of the county attorney was so flagrant as to warrant reversal in the absence of objection.

We wish to point out that the conduct of the county attorney was improper, and the trial court would have been justified in admonishing him on its own motion. It is hoped this particular prosecutor—as well as other Wyoming prosecutors—will refrain from such improper conduct in the future.

### Motions for Acquittal and New Trial

Under his argument that the trial court should have granted his motion for acquittal or, in the alternative a new trial, the defendant raises only points already considered under his previous argument, and therefore no detailed discussion will be had on this point. We treat the defendant's argument as questioning the sufficiency of the evidence to support the verdict rather than an appeal from the trial court's failure to grant the motions since no appeal may be had from the denial of the motions themselves. We have examined the record and are convinced there was sufficient evidence to support the verdict of the jury.

During oral argument the defendant pointed out that defendant's co-partici-

pants, including the young man who actually committed the theft, were tried in juvenile court and therefore have no felony record, while he was tried and convicted in the district court and now stands as a convicted felon. We appreciate the defendant's argument that this is unfair to him. However, the legislature, commencing with the Juvenile Court Act in 1951, provided for this additional means of handling charges against minors. The legislature did not say then, nor does it say now, that all juvenile matters must be handled in a juvenile court. The Juvenile Court Acts set forth an additional procedure that may be followed and is cumulative, not inclusive, or mandatory. We are not apprised as to why the county attorney filed this particular cause in the district court. It would be mere speculation on our part to attempt to determine his reasons for so doing. He acted within the framework as authorized by the legislature.

The verdict of the jury and the judgment and sentence of the trial court are affirmed.