Edward J. CARLSON and Sherry
Carlson, Appellants (Plaintiffs),

v.

BMW INDUSTRIAL SERVICE, INC., a
Utah corporation, and Steve Berry,
Appellees (Defendants).

No. 86–225.

Supreme Court of Wyoming.

Nov. 10, 1987.

James Gusea of Vines, Gusea & White, P.C., Cheyenne, and Jon L. Holm, and Steven A. Christensen, Jeffrey C. Johnson of Holm and Christensen, P.C., Denver, Colo., for appellants.

Roy A. Jacobson, Jr. of Vehar, Beppler, Jacobson, Lavery & Rose, P.C., Kemmerer, and Gary B. Ferguson of Richards, Brandt, Miller & Nelson, Salt Lake City, Utah, for appellees.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

BROWN, Chief Justice.

In this case, appellants Edward and Sherry Carlson brought a tort action against Steven Berry and BMW Industrial Services, Inc. (BMW), for damages resulting from a collision between a motorcycle driven by Edward Carlson and a pickup owned by BMW. A jury awarded appellants total damages of $51,000, which was reduced to $26,010, based upon the jury finding that appellant Edward Carlson was forty-nine percent negligent. The trial court denied subsequent motions for a new trial and for

additur. Appellants raise the following issues on appeal:

## I

Did the trial court abuse its discretion and prejudice the plaintiffs in denying the plaintiffs' motions for continuance made prior to and during trial?

## II

Was the jury panel prejudiced during the voir dire of Austin Day, and did the trial court abuse its discretion in failing to dismiss that jury panel?

## III

Did non-evidentiary comments of defendants' counsel regarding plaintiffs' use of a dangerous instrumentality prejudice the jury's finding of comparative negligence?

## IV

Was the jury's damages award influenced by passion and prejudice and therefore insufficient as a matter of law?

We will affirm.

On March 13, 1984, Steven Berry, an employee of BMW was returning to the Antler Motel in Kemmerer, Wyoming, in a company pickup. As he began to turn left across the southbound lane of Coral Street and into the motel parking lot, Mr. Berry saw a motorcycle approaching his truck and slammed on the brakes. Edward Carlson, the rider of the motorcycle, also braked, but skidded into the left front corner of the pickup and was thrown from his motorcycle. As a result of the accident, Mr. Carlson suffered numerous injuries, including a herniated disk.

Appellants then filed an action to recover medical expenses, lost wages, and damages

for impairment of the quality of their marital and family life. The jury awarded appellants damages of $51,000, but also concluded that Carlson was forty-nine percent at fault in the accident. The court then reduced the damages in proportion to the fault attributed to Carlson and entered judgment for appellants in the amount of $26,010.

## I

Appellants first argue that the trial court abused its discretion when it denied two motions for continuance made before and during the April 16, 1986 trial. We begin by noting that the trial court has the sound discretion to grant or deny a motion for continuance, and that discretion will not be disturbed on appeal. *Shanor v. Engineering, Inc. of Wyoming*, Wyo., 705 P.2d 858, 861 (1985). We also have held that a trial court may deny a continuance if the need for the continuance is caused by the movant. *Bacon v. Carey Company*, Wyo., 669 P.2d 533, 535 (1983). The ultimate issue when abuse of discretion is raised is whether the trial court exercised sound judgment under the circumstances, avoiding an arbitrary and capricious decision. *England v. Simmons*, Wyo., 728 P.2d 1137, 1140 (1986).

A trial court is statutorily authorized to grant a continuance when good cause to do so is shown by the party seeking the continuance.[1] The trial court may not grant a continuance based on a mere whim, request, or the convenience to counsel without a substantial factual or legal reason for doing so. *Shanor v. Engineering, Inc. of Wyoming*, supra. A movant seeking a continuance to secure missing testimony or other evidence must demonstrate by affidavit that he used due diligence in attempting to procure the evidence or any missing testimony.[2] Due dil-

---

1. Section 1-9-102, W.S.1977, provides:

 "Any court, *for good cause shown* may continue any action at any state of the proceedings at the cost of the applicant, to be paid as the court shall direct." (Emphasis added.)

2. Section 1-9-101, W.S.1977, provides:

 "(a) A motion to postpone the trial of a case because of the lack of evidence shall be supported by affidavit showing:

 "(i) The materiality of the evidence expected to be obtained;

 "(ii) That *due diligence* has been used to obtain the evidence; and

igence, in the context of a missing witness, is not satisfied when a party simply secures agreement from the witness that he will attend trial, but a party must make every reasonable effort to insure that his witness will be present. This can include alternate travel plans or schedules and the use of depositions to preserve important testimony. A party choosing to forego these measures and rely on less effective means of securing testimony does so at his own risk. *Hinton v. Saul*, 37 Wyo. 78, 84–85, 259 P. 185, 186–187 (1927); and *Larion v. City of Detroit*, 149 Mich.App. 402, 386 N.W.2d 199, 203 (1986).

The first motion for continuance in question was based on appellant's request to allow Edward Carlson to undergo an "MRI" examination before trial. This exam would have given Mr. Carlson's physician, Dr. Bryan, more data to determine the extent of Mr. Carlson's residual disability from the accident. The motion was timely filed on April 7, 1986, and later renewed on April 14, 1986. The trial court denied both the initial motion and the renewed motion.

■ Appellants urge that the trial court's ruling effectively denied them an opportunity to present fairly and completely their case. In support of this position they cite two cases from other jurisdictions in which an appellant with *no control* over the circumstances causing the need for continuance was held to have been denied a continuance improperly. See *Yates v. Superior Court in and for County of Pima*, 120 Ariz. 436, 586 P.2d 997 (1978); and *Gonzales v. Harris*, 189 Colo. 518, 542 P.2d 842 (1975). These cases, however, are not precisely on point. In Yates, the appellant's motion for continuance, although filed two weeks before a medical liability review panel hearing, was not heard by the panel until two days before the hearing, working an obvious injustice beyond appellant's control. *Yates v. Superior Court in and for County of Pima*, supra, 586 P.2d at 998. In this case, the trial court promptly considered the relevant motions for continuance, ruling on them the same day they were filed. The Gonzales decision involved a trial court refusing to grant a continuance when the *plaintiff* unavoidably was unable to be present at his own civil trial. *Gonzales v. Harris*, supra 542 P.2d at 843–44. Here, appellants clearly were present for the April 16, 1986, proceedings.

Appellants also direct us to the holding in *Salazar v. State*, Alaska, 559 P.2d 66 (1976). In Salazar, a criminal defendant was held to have suffered an abuse of trial court discretion when he was denied a continuance to secure the testimony of an absent police officer. The decision in Salazar, however, was grounded on an appellate finding that the defendant had been diligent in attempting to secure the missing evidence before requesting the continuance. *Salazar v. State*, supra at 74. That is not the situation here.

The trial record clearly indicates that this trial had been continued three times before the first motion at issue, once at appellants' request, and twice at appellees' request. The trial, originally scheduled for December 16, 1985, was subsequently moved to January 13, 1986, then to March 24, 1986, eventually set for April 16, 1986. In conjunction with the April 16 trial,

"(iii) Where it is expected the evidence may be found.
"(b) If the postponement is because of an absent witness, the affidavit shall also state:
"(i) Where the witness resides, if known;
"(ii) The probability of procuring the testimony within a reasonable time;
"(iii) That absence of the witness was not procured by the act or connivance of the party seeking the postponement, nor by others at his request or with his knowledge or consent;
"(iv) The facts the witness is expected to prove and that affiant believes the facts as stated to be true; and

"(v) Such facts cannot be proven by any other witness whose testimony can be as readily procured.
"(c) If the adverse party consents that, on the trial, the facts stated in the affidavit will be taken as true, if the evidence is written or documentary, or in case of an absent witness that the witness will testify to the facts stated in the affidavit as true, the trial shall not be postponed for that cause. The party against whom the evidence is offered may impeach the evidence of an absent witness the same as when the witness is present or his deposition is used." (Emphasis added.)

scheduled in the February 27, 1986, pretrial order, the parties were to designate their experts by March 1 and discovery was to end on March 21. This gave appellants three additional months from the original date set for trial to conduct discovery and four additional months to prepare their evidence. Further, we can only assume that appellants' counsel, being assiduous litigators, had been preparing the case under the pressure of the earlier trial dates before the grant of the continuance that moved the trial back to April 16. Despite these repeated grants of additional preparation time from the trial court, appellants did not schedule the MRI exam until April 11, 1986.

Based on these circumstances, we hold that appellants were not diligent in preparing the MRI exam evidence. We are not unmindful that the MRI, as it was scheduled, occurred after a follow-up hernia surgery on Edward Carlson that took place in late February or early March. We fail to understand, however, why appellants were willing to proceed to trial three times before this surgery without an MRI that was available to them for at least four months, but could not proceed without an MRI scheduled only five days before a trial date known to them since February 27, 1986. Appellants had ample time, more than they could have originally anticipated, to conduct discovery and prepare their evidence. The trial court's denial of the first motion for continuance at issue here was not arbitrary and capricious and was not an abuse of its discretion.

■ The second motion for continuance was raised informally on the second day of trial after the clerk of court informed appellants' counsel that Dr. Bryan could not fly from Salt Lake City to Kemmerer that morning due to inclement weather. After receiving this information, the following colloquy took place between the court and appellants' counsel:

"MR. HOLM: Your Honor, my witness is under instrument flight rules and unable to leave, as far as I know. I just received a note from Mr. McCloud that *he is socked in by the weather.*

"THE COURT: Do you have any other witnesses besides the one that's socked by the weather?

"MR. HOLM: No, your Honor, I don't.

"THE COURT: Then does the Plaintiff rest?

"MR. HOLM: I suppose we have no choice, your Honor. *If we can't continue the matter until such time as he can be here, then we would rest.*

"THE COURT: Call your next witness, Mr. Ferguson." (Emphasis added.)

Mr. Holm's statement, "If we can't continue the matter until such time as he can be here, then we would rest" apparently was made in reference to the trial court's earlier statement in chambers that "no further continuances" would be granted.

As the record indicates, no formal motion for continuance was made at trial. Generally, this court will not consider whether there has been an abuse of discretion where the issue is not raised before the trial court. *Dennis v. Dennis,* Wyo., 675 P.2d 265, 266 (1984). The above statements taken together, however, are sufficient to raise the question of abuse of discretion for this court's consideration using the previously described standard of review for motions for continuance.

■ While appellants contended that Dr. Bryan could not fly out of Salt Lake City on April 17, 1986, because of instrument flight rules, appellees argued that at least two planes flew from Salt Lake City to Kemmerer on April 16 and 17. The issue, though, is not the severity of the weather in Kemmerer and Salt Lake City on April 16–17, 1986; instead, it is whether appellants were diligent enough in trying to obtain Dr. Bryan's testimony to warrant a fourth continuance on the day of trial. We hold they were not.

Appellants had more than sufficient time to secure alternate travel arrangements for Dr. Bryan in case of severe April weather—a frequent occurrence in Wyoming—or to take his deposition. Dr. Bryan had first treated Mr. Carlson as a transfer patient from Kemmerer on March 16, 1984. He was available to appellants throughout the

first three continuances and right up to the March 21, 1986, discovery cut-off. It is also significant that appellants actually scheduled Dr. Bryan's deposition for March 21, 1986, in a document dated March 17, 1986. This suggests that appellants recognized the precautionary and discovery values of taking Dr. Bryan's deposition. Recognition of these values is evidently all that occurred, however, because the deposition does not appear in the record and apparently never was taken. The record is also barren of any further attempts by appellants to reschedule the deposition after the March 21, 1986, discovery cut-off.

Based on these observations, we can only conclude that appellants were willing to gamble on Dr. Bryan's attendance at trial and ended up drawing a losing hand. The price of their wager is our holding that they were not diligent under the rules of law set out in § 1-9-101, W.S.1977. *Hinton v. Saul*, supra; and *Larion v. City of Detroit*, supra. Appellants were not entitled to a continuance during the trial under these circumstances, and the trial court did not abuse its discretion in denying them one.

## II

■ Appellants also argue that the jury panel was prejudiced during the voir dire of Austin Day and that the trial court abused its discretion by not granting appellants' motion to dismiss the jury. During appellants' voir dire examination of the jury panel, the following exchange took place:

"MR. DAY: I have a—I am concerned about awards, the high costs of—that are given out by the courts and I am concerned that if the court—I don't understand the proceeding. Does the court ask us to give a specific amount or does the Jury get to decide on the amount? I don't understand that part of it and I am concerned about that.

"MR. HOLM: The Court will instruct you about what you are to use to determine your award. If you determine liability exists and that there are injuries and the plaintiff should be compensated for them, the Judge will instruct you on

what you are to consider but you are not directed to give any amounts. You are simply to use your own opinion as to what you hear from the witness stand.

"MR. DAY: So merely we are sitting upon whether the—the Judge will set the amount that he feels, is that—

"THE COURT: You will set the amount.

"MR. HOLM: You will set the amount.

"THE COURT: You are a judge and this will be your opportunity to be a judge, Mr. Day.

"MR. DAY: The point was earlier is I am concerned of the amounts given. Definitely, I am. Because *as a person paying insurance, I feel it's coming directly out of my pocket.*

"MR. HOLM: Your honor, I think I would like to voir dire Mr. Day a little more. I think it would be more appropriate in camera." (Emphasis added.)

After further voir dire of Mr. Day in camera, appellants made a motion to dismiss the entire jury panel on grounds that Mr. Day's earlier statement had prejudiced the jurors. The trial court did not agree that the jurors had been prejudiced, and therefore denied the motion.

■ A party may not introduce evidence to the jury regarding liability insurance coverage on the issue of negligence. Rule 411, Wyoming Rules of Evidence. See also *Miller v. City of Lander*, Wyo., 453 P.2d 889, 892 (1969); 4 A.L.R.2d 761, 767–773 and Later Case Service 1–4 at 499–502. We previously have held, however, that a statement similar to the one made in the instant case did not cause prejudicial error. *Barnette v. Doyle*, Wyo., 622 P.2d 1349, 1365 (1981). In Barnette, the defendant claimed he was prejudiced by a juror's remark that, " * * * I would assume with regulations and such of all industry that liability insurance would be carried by the company * * *." Id., at 1364. We held that because the jury was instructed to ignore the reference to insurance coverage and no other evidence of prejudice could be found in the record, we presumed the jury followed the instruction. Id., at 1365.

■ Appellants argue that since the trial court did not dismiss the jury, it should

have attempted to cure the prejudicial effect of the comments by giving a limiting instruction or holding in camera hearings with members of the panel to insure that Mr. Day's comments did not prejudice the panel. We adhere to the rule that a limiting instruction, if desired, must be clearly requested by counsel. An objection alone is not enough to trigger such an admonishment. *Sybert v. State*, Wyo., 724 P.2d 463, 466 (1986); *Rialto Theatres, Inc. v. Commonwealth Theatres, Inc.*, Wyo., 714 P.2d 328, 334 (1986); and Rule 105, W.R.E. Also relevant to this inquiry is whether counsel was given an opportunity to explore any potential juror prejudice on voir dire. See Rule 47, Wyoming Rules of Civil Procedure.

Appellants did not clearly request a limiting instruction regarding Mr. Day's remarks. Appellants also failed to take advantage of their express opportunity to explore further any juror prejudice upon resumption of voir dire after being allowed to do so. Based on our standard of review and these circumstances, we hold that the trial court did not abuse its discretion in denying appellants' motion to dismiss the entire jury panel.

### III

 Appellants' third argument is that appellees' counsel commented improperly during closing argument concerning the make and style of appellant Edward Carlson's motorcycle and about his state of mind. Appellants contend that these comments were unsupported by the evidence and prejudiced the jury's finding of comparative negligence. The record is clear that appellants failed to object to appellees' closing remarks at the time those remarks were made. This issue, therefore, is precluded from being raised on appeal. In the absence of a timely objection to opposing counsel's argument and the affording of an opportunity for the trial court to correct the effect of the argument, we cannot now

consider the argument as grounds for reversal. *Dennis v. Dennis*, supra.

 We long have recognized that even in the absence of timely objection by opposing counsel, cases involving attorney misconduct occasionally might be so flagrant as to justify our review and a reversal. *Mullin v. State*, Wyo., 505 P.2d 305, 310 (1973); and *State v. Wilson*, 32 Wyo. 37, 228 P. 803, 809 (1924). Our review of this record, however, discloses no statements by appellees' counsel that could not reasonably be inferred from the evidence, much less constitute misconduct. We need not consider this argument further as it was not properly raised on appeal.

### IV

Appellants' last contention is that the cumulative effect of the trial court rulings discussed in the preceding three issues aroused passion and prejudice in the jury that improperly influenced its damages award. They contend that the jury grossly undervalued the damages suffered by appellants as a matter of law,[3] and that their injuries were much more grievous than the award reflects. Appellants specifically point out that in addition to approximately $15,000 in medical expenses, appellant Edward Carlson suffered disabling injuries, along with severe pain and distress, and that appellant Sherry Carlson suffered the complete loss of a conjugal relationship with her husband, as well as a loss of his help with household duties. Appellants further suggest a significant loss in family income, and claim that Sherry Carlson has had to assume some of her husband's responsibilities at his place of business as well as a part-time job at Seven Eleven. Finally, appellants assert that because of Mr. Carlson's injuries, and because of his inability to spend time with his children, the children have suffered emotionally to the extent that both family life and school work have been drastically affected.

 We review the adequacy of a damages award strictly, so that:

---

**3.** At trial appellants sought approximately $1.8 million in damages; however, the jury awarded appellant Edward Carlson $43,000 in damages and appellant Sherry Carlson $8,000 for a total award of $51,000.

"The jury's determination of the amount of damages is inviolate absent an award which is so excessive or inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, or other improper cause had invaded the trial. [Citations.]" *Brittain v. Booth*, Wyo., 601 P.2d 532, 536 (1979). We also note that the trial court has the right and duty to grant a new trial or modify an award if it considers under the facts and circumstances disclosed at trial that the award was inadequate. Rule 59(a)(5) and (b), W.R.C.P.; and *McPike v. Scheuerman*, Wyo., 398 P.2d 71, 73 (1965). We will not set aside the trial court's granting or denying an additur unless an abuse of discretion is shown. Id., at 73.

█ The record shows that Mr. Carlson was released from the hospital fifteen days after the accident. It also appears that his fractures were healing well although Mr. Carlson will be restricted to moderate lifting and avoiding certain body positions due to the herniated disk in his back. A review of the trial transcript reveals no evidence on the issue of lost wages. No figure for lost salary or income was presented to the jury. The jury was, at best, given an incomplete basis in fact from which to determine lost wages. The trial court did not find that the jury was prejudiced by the absence of Dr. Bryan's testimony, Mr. Day's comments made during voir dire or remarks by appellees' counsel during closing argument. Since we find no abuse of discretion in any of the challenged rulings, we cannot hold that those rulings unfairly influenced the damages award.

The jury and the trial court heard all of the evidence presented by appellants. The jury determined that $51,000 adequately compensated appellants for the injuries they suffered, and the trial court agreed. There is no indication that the jury acted out of passion or prejudice in reaching a $51,000 verdict for appellants that would compel us to meddle with that award. *Brittain v. Booth*, supra. The trial court then, properly reduced the award to $26,010, based on the comparative negligence finding. We hold that the trial court did

not act arbitrarily or capriciously in refusing appellants' request for additur. No abuse of discretion existed.

Affirmed on all issues.

URBIGKIT, J., filed a specially concurring opinion.

URBIGKIT, Justice, specially concurring.

Appellate court persuasion in many continuance-denied decisions is to criticize the attorney and condemn the interest of the litigant. Unquestionably, the justice-system requirement to maintain progress and organized process comes into conflict with the need of the litigant to be given a fair shake and a reasonable call upon his right to justice. *Ungar v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921, reh. denied 377 U.S. 925, 84 S.Ct. 1218, 12 L.Ed.2d 217 (1964). In the interest of the individuals in whose names the justice system exists, rights to malpractice protestation should not be simplistically substituted for process flexibility. Cf. *Hochhalter v. Great Western Enterprises, Inc.*, Wyo., 708 P.2d 666 (1985); Thomason, *A Plea for Absolute Immunity for Errors in Trial Judgment*, 14 Willamette L.J. (1978). Litigation management also should not be substituted for the litigant's right to a fair trial; nor should Wyoming's changeable weather deny justice.

I separately concur in this case, since no appellate record is here provided which would afford a basis for contended trial-court abuse of discretion in denial of a trial continuance to obtain the presence of an important witness. Not only were the requirements of § 1–9–101, W.S.1977 not followed with filed affidavit, but nothing is recorded as to alternative travel arrangements that may have been explored, including, as noted by appellee, by moving "to reopen appellant's case in order to accommodate Dr. Bryan's testimony later in the proceedings." Flexibility in trial arrangement is required only as flexibility is demonstrated in adaptation by counsel who requests the delay or moves for the continuance. *United States v. Burton*, 584 F.2d 485 (9th Cir.1978), cert. denied 439 U.S.

1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979). A contrary view could properly be stated if a documented effort had been made to provide travel for the witness by car, or to have him come as soon as possible and then reopen at some time prior to the time that testimony was concluded.

Without a discernible appellate record on the claimed trial error, I cannot evaluate contentions of abuse of discretion. *Feaster v. Feaster*, Wyo., 721 P.2d 1095 (1986); *Nicholls v. Nicholls*, Wyo., 721 P.2d 1103 (1986).